UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

RONALD KING HOOD,

                Plaintiff,                    Case No. 2:10-cv-368

v.                                     Honorable R. Allan Edgar

JEFFREY WOODS et al.,

                Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Woods, Ludwick, Duma, McCormick, Suriano, DeVerney, S. Smith, Stapleton, Berlinger, Sheets-Parsons, Sibbald, Russell, Armstrong, J. Smith, Davis, Theut, Alford, Hanson, Ames, Wallis, Wilson, Fuentes, Schroeder, Miller, Olson, Norton, Marquette, Rivard, Beltz, Kohloff, Best, Holland, Coston, Harrington, Sivik, Valone, VandeCasteele, Hollenbeck, Raddatz, Gager, Sizer, and unknown

parties ##1 and 2.  The Court will serve the amended complaint against Defendants Thelen, Reno, Evans, Hughes, Renard, and Robinette.

## Factual Allegations

Plaintiff Ronald King Hood presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the St. Louis Correctional Facility (SLF), though the actions of which he complains also occurred at the Kinross Correctional Facility (KCF).  Plaintiff sues the following 52 Defendants:  KCF Warden Jeffrey Woods; SLF Warden Nick Ludwick; MDOC Hearings Administrator Richard Stapleton; KCF Hearings Officer David Theut; KCF Grievance Coordinator L. Berlinger; SLF Grievance Coordinator Kathleen Sheets-Parsons; KCF Hearing Investigator Kevin Alford; SLF Hearing Investigator Brenda Holland; KCF employee M.C. Sibbald; MDOC Managers of the Grievance and Appeals Section R.D. Russell and Jim Armstrong; Ionia Regional Business Office (IRBO) Accounting Technician Deb Beltz; IRBO Financial Manager Mike Kohloff; SLF Facility Manager Wayne DeYerney; SLF Acting Facility Manager Scott Smith; SLF Storekeepers D. Reno and Travis Gager; SLF Acting Warden Steve Rivard; SLF Assistant Deputy Warden (ADW) Kelly Best; KCF ADW Kathy Olson; KCF Resident Unit Managers (RUMs) Robert Norton and unknown party #1; SLF RUM (unknown) Duma; SLF Assistant Resident Unit Supervisors (ARUSs) (unknown) McCormick, Kelly Hughes and unknown party #2; KCF ARUS G. Suriano; SLF Sergeant (unknown) Hanson; KCF Corrections Officers (unknown) Renard, Jane Wilson,  (unknown) Wallis, S. Schroeder, (unknown) Miller, and B. Marquette; SLF Corrections Officers D. Thelen, S. Coston, S. Harrington, C. Sivik, and R. Ames; SLF Librarians Anthony Valone and Judith Raddatz; SLF Assistant Librarians (unknown) VandeCasteele and K. Hollenbeck; SLF Nurses Betty Robinette, Jill Smith, J. Davis; KCF Nurse Matt Sizer; SLF Quartermaster

- 2 -

Supervisor Joe Fuentes; SLF Mailroom Employee D. Evans; and unknown SLF Mailroom Employees ##3, 4, and 5.

Plaintiff's allegations span the time period between December 16, 2008 and October 26, 2010.  On December 16, 2008, Plaintiff asked Defendant Renard for safety and health equipment to prevent exposure to excessive dust, dirt and contaminants.  Renard denied his request and told him either to take the job or risk receiving a misconduct ticket.  Plaintiff signed a work assignment form, but noted at the bottom of the form that he had asked for specific work safety items.  Renard allegedly ripped off the bottom of the form.  Plaintiff continually informed Renard that his health was suffering from the dust, but Renard refused to correct the problem.  On December 19, 2008, Plaintiff complained to Defendant Warden Jeffrey Woods that he was being exposed to dust, germs and contaminants without adequate safety perfection, and that his exposure caused him to become dizzy and nauseous.  Defendant Woods allegedly failed to investigate or take corrective action.  Also on December 19, 2008, Plaintiff submitted a health care request, and he was seen by Defendant Sizer on December 23, 2008.  Sizer asked Plaintiff to sign the co-pay agreement form.  When Plaintiff refused, Sizer sent him away.  On December 30, 2008, Plaintiff lost consciousness while working, causing him to fall down a stair and injure his head, back, neck and right shoulder.  According to Plaintiff, he also had informed Defendants unknown parties #1, #2 and #3 of the lack of safety items, but they failed to correct the situation.

Plaintiff also alleges that, on March 17, 2009, Defendant Woods punished him in some unspecified way for filing grievances.  Plaintiff alleges that, as Warden, Defendant Woods was aware of conduct by his staff that denied Plaintiff access to the bathroom, deprived him of meals, and denied him health and safety items and protective clothing.  He also alleges that Woods was

aware that Plaintiff was being penalized for refusing to house in an inhumane, six-person punitive segregation cell.

Plaintiff next alleges that, on July 9, 2009, Defendant Warden Nick Ludwick approved unspecified punishment of Plaintiff for filing grievances.  Plaintiff also alleges that Ludwick, as warden at SLF, was responsible for Plaintiff being denied access to the library between January 15 and January 25, 2010.  Plaintiff contends that the state court returned unidentified pleadings to Plaintiff on January 28, 2010, ostensibly because Plaintiff had failed to obtain the necessary legal materials.  In addition, according to Plaintiff, the water supply at SLF is contaminated and Defendant Ludwick was aware that Plaintiff was suffering unspecified symptoms from exposure to the water, yet he failed to correct the situation.

Further, Plaintiff complains that, notwithstanding Plaintiff's complaints, Ludwick continued to apply MDOC policy of withholding money from Plaintiff's trust account statement and making proportionate payments on all of Plaintiff's court-related debts, rather than applying monthly funds to one debt at a time.  Plaintiff asserts that the practice had the effect of denying Plaintiff access to the courts because he continued to owe outstanding court costs and could not proceed *in forma pauperis* in any new state case until those debts were paid.  The practice also forced Plaintiff to choose between already initiated legal actions and the purchase of basic hygiene products and other prison store items.  Finally, Plaintiff alleges that Defendant Ludwick was aware of the various deprivations by staff and nevertheless denied Plaintiff's grievances and otherwise failed to correct the problem.

Plaintiff states that Defendant IRBO Accounting Technician Deb Beltz, despite being aware of Plaintiff's complaints about the policy of making fee payments on multiple court fees at

one time, refused to discontinue the practice.  Plaintiff alleges that Beltz, like Ludwick, continued the practice, forcing Plaintiff to choose between continuing his litigation and purchasing necessary store products.  Plaintiff alleges that Defendant IRBO Financial Manager Kohloff was aware of the policy and its effect and supported the policy's enforcement, despite knowing that Plaintiff was unable to purchase needed health and hygiene items between January and September 2010. Defendant Rivard, as acting warden at SLF, also allegedly was responsible for continuing the policy during this period.

According to the complaint, Defendant Stapleton allegedly denied Plaintiff due process by refusing to overturn five separate misconduct convictions heard in March 2009 and February 2010.  Plaintiff alleges that Defendant Alford failed to investigate the misconduct charges leading to two of those five misconduct convictions.  In addition, he alleges that Defendant Holland failed to investigate the other three misconduct charges.  Plaintiff also generally alleges that Defendant Theut, the Hearings Officer, conspired with Defendant Alford to create a system of refusing to investigate misconduct charges.  Further, Plaintiff alleges that, on March 3 or March 4, 2009, Defendant Alford took possession of and destroyed Plaintiff's unspecified personal property, which caused Plaintiff financial loss and prevented Plaintiff from using the property as evidence at his misconduct hearing.  According to Plaintiff, Defendant Alford conspired with Defendant Corrections Officer Jane Wilson to have Plaintiff found guilty of the misconduct charge.

On March 4, 2009, Plaintiff was placed on toplock status (room restriction).  Plaintiff allegedly informed Defendant Suriano that he was taking prescription medication that caused him to use the bathroom hourly.  Defendant Suriano allegedly did not supervise his subordinates, Defendants Renard, Wallis, and Wilson did not allow him to use the bathroom each hour on

occasions between March 4, 2009 to March 11, 2009, thereby forcing Plaintiff at times to either urinate in his drinking cup or urinate on himself.  In addition, on that same date, Suriano allegedly did not ensure that Defendants Renard, Wallis and Wilson were in place to provide Plaintiff the necessary authorization to go to the dining hall.  Plaintiff therefore allegedly was denied several meals between March 4 and March 11.

Plaintiff alleges that Defendants Schroeder and Miller, acting without authorization, placed him in punitive segregation on March 12, 2009.  Schroeder ordered Plaintiff into a six-man segregation cell and wrote a misconduct ticket against Plaintiff when Plaintiff refused to comply. On March 17, Defendant Marquette allegedly conspired with Defendants Olson and Norton to retaliate against Plaintiff for not agreeing to move to the cell by issuing another misconduct report.

Plaintiff contends that, as manager of her unit, Defendant SLF RUM Duma is responsible for Plaintiff's placement in a dirty holding cell for four hours, during which he received no bathroom break and was given no place to sit.  Plaintiff also complains that Duma is responsible for Plaintiff's subsequent placement in a punitive segregation cell, despite the fact that punitive segregation was not ordered.  While in the segregation cell, Plaintiff's toilet flooded, leaving visible waste on the floor, and Plaintiff was forced to remain in the cell for an unspecified period, during which he was not provided cleaning supplies.  He complains that he was not given showers or his legal materials during the unspecified period during which he was in segregation.  Plaintiff alleges that, as supervisor of the unit, Defendant McCormick also is responsible for the deprivations, as is another supervisor, unknown party #2.

Plaintiff complains that Defendant Hearing Investigator Holland created a policy or custom that prevented Plaintiff from obtaining legal copies he required for the court.  He alleges that

one of his unspecified civil cases was dismissed because he could not present copies in a timely manner.  In addition, after the state court ordered a rehearing on Plaintiff's March 3, 2009 misconduct ticket, Defendant Holland allegedly failed to investigate or otherwise assist Plaintiff to obtain evidence for his defense.

The state court dismissed one of Plaintiff's cases in November 2009.  Plaintiff requested a photocopy of a document from Defendant Librarian VandeCasteele.  VandeCasteele told Plaintiff that Defendant Hearing Investigator Holland and ADW Holland told VandeCasteele not to make the copy.  VandeCasteele also allegedly denied Plaintiff access to the law library between January 15 and January 24, 2010, notwithstanding the fact that VandeCasteele knew Plaintiff had pending litigation.  Plaintiff alleges that Defendants Hollenbeck and Raddatz also denied Plaintiff access to the library on all but one day between April 2009 and June 2009.  On March 29, 2010, Defendant Hollenbeck refused to make copies for Plaintiff, as the documents were not law materials or for legal research.  On June 18, 2010, Defendant Valone refused to provide legal materials to Plaintiff, despite knowing that Plaintiff was working on litigation against the MDOC.

Plaintiff alleges that Defendants DeVerney and Smith were responsible for supervision and training on several occasions when Plaintiff's incoming and outgoing mail was improperly handled.  On July 23, 2009, Plaintiff received back 20 envelopes that he had sent to Defendant Reno for postage metering, none of which had been metered.  Plaintiff complains that the reason given for not metering the envelopes – that the envelopes contained the MDOC logo – was inadequate, given that the envelopes had been sold to Plaintiff by Defendant Gager and were the only envelopes sold at the prison store.  Plaintiff alleges that the problem prevented him from sending mail to his family and friends for an unspecified period.

Plaintiff complains that Defendant Grievance Coordinators L. Berlinger and Sheets-Parsons improperly rejected and denied his grievances and conspired with one another to prevent Plaintiff from successfully filing grievances or complaints against other officers.  Plaintiff asserts that Defendant Sheets-Parsons also punished Plaintiff for filing grievances by placing him on modified grievance access.[1]  Plaintiff alleges that Defendant Sibbald reviewed and approved Defendant Berlinger's grievance denials.  Further, he alleges that Defendants Russell and Armstrong, who apparently were Step III grievance reviewers, were aware of most of his complaints and grievances but failed to stop them or to overturn grievance denials.

Plaintiff also alleges that Defendant SLF Acting Warden Rivard, SLF ADW Best, and KCF ADW Olson all were aware of the adverse decisions and actions of their subordinates and the denials and rejections of his many grievances, yet they did nothing to stop them and approved the grievance denials.  Plaintiff also alleges that Defendant Best established a policy that prevented him from obtaining necessary legal copies, resulting in the dismissal of an unspecified legal action.  Further, Plaintiff alleges that Defendant Olson conspired with Defendants Norton and Marquette to retaliate against him for refusing to move to a small punitive segregation cell with five other prisoners, by charging him with a major misconduct, transferring him to another prison, and changing his security classification.

Plaintiff also alleges that, from April 2, 2009 to June 30, 2009, Defendant Fuentes denied him certain requested clean clothes and quartermaster items.  In addition, he alleges that, on

---

[1] Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007).

September 11, 2009, Defendant unknown party #3 opened his legal mail, which related to a pending case, outside his presence.   Unknown party #4 allegedly opened Plaintiff's legal mail, correspondence from the Legislative Corrections Ombudsman on October 30, 2009.  On February 9, 2010, unknown party #5 allegedly opened legal mail from the Legislative Corrections Ombudsman's office.

On March 20, 2010, Defendants Hanson and Ames ordered Plaintiff to leave the dining hall before Plaintiff had eaten his meal.  Plaintiff objected because he had just gotten to his seat and he was hungry.  Plaintiff alleges that Defendants' action was in violation of a prison policy or practice.

On multiple occasions between June 2009 and January 2010, Defendants Thelen, Coston, and Harrington allegedly refused to open Plaintiff's cell door so that he could get his legal mail processed and mailed out, thereby interfering with his legal mail.  Defendants Harrington and Sivik prevented Plaintiff from going to the library on January 25, 2010, thereby preventing him from accessing legal materials and subjecting him to punishment for not being in the law library that day.  On July 29, 2009, Plaintiff complained about Defendant Thelen to Defendant Rivard.  When Thelen learned of the complaint, he called Plaintiff a "snitching bitch" and threatened him.  Thelen then ransacked Plaintiff's property.

On January 1, 2010, Plaintiff ran out of pain medication for his head and back injuries.  Plaintiff was informed by an unknown nurse that, as a result of cost-cutting measures, healthcare no longer was providing prisoners with medication that was sold in the prison store.  Plaintiff told the nurse that he could not afford to buy medication in the prison store.  The nurse offered to put Plaintiff down to see the doctor.  Plaintiff was not seen by a medical provider for more

than a month.  On February 10, 2010, Defendant Nurse Robinette told Plaintiff to purchase the pain medication himself.  Plaintiff allegedly suffered excruciating headaches and back pains between January 1, 2010 and March 23, 2010.  Plaintiff also alleges that Defendant Nurse Jill Smith was aware that Plaintiff was in pain, but she did not ensure that he had medication.  Plaintiff alleges that Defendant Davis approved of Davis' decision to deny pain medication for three months.

On June 18, 2010, Plaintiff requested legal materials from Defendant Valone, who denied his request, despite knowing that Plaintiff was indigent and was working on litigation against the MDOC.

On October 26, 2010, Defendant Evans rejected Plaintiff's incoming mail (a birthday card addressed to Plaintiff by his mother) because it was unsigned.  Defendant Hughes called Plaintiff to her office on November 4, 2010, to inquire what he wanted to do with the mail.  Plaintiff insisted that he receive the mail.  Hughes denied his request and told him to leave the office without a hearing.  Plaintiff was later told by Defendant Scott Smith that the mail had been lost.

For relief, Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

## Discussion

### I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Conspiracy

        Plaintiff broadly alleges that Defendants Olson, Norton and Marquette conspired to retaliate against him for refusing to move to a punitive segregation cell.  He also alleges that

Defendant Theut conspired with Defendant Alford to create a system of refusing to investigate misconduct charges.  In addition, he alleges that Defendant Alford conspired with Defendant Wilson to have Plaintiff found guilty of a misconduct charge.  Further, he alleges that Defendant grievance coordinators Berlinger and Sheets-Parsons conspired to prevent Plaintiff from filing grievances.

To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.  *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987);  *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).  A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right.  *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988).  "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim."  *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996).  A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy.  *Birrell v. State of Mich.*, No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are wholly conclusory and speculative.  Plaintiff has provided no factual allegations establishing a link between the alleged conspirators or any agreement between them.  As the Supreme Court has held, such allegations, while hinting at a

"possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *See Twombly*, 550 U.S. at 556. Plaintiff therefore fails to state a plausible claim of conspiracy against Defendants Olson, Norton, Marquette, Theut, Alford, Wilson, Berlinger, and Sheets-Parsons.

## B.    Supervisory Liability

Plaintiff alleges that Defendants Woods, Ludwick, Rivard, Best, Duma, McCormick, Siriano, DeVerney, S. Smith, Stapleton, Berlinger, Sheets-Parsons, Sibbald, Russell, Armstrong, J. Smith, Davis and unknown parties ##1 and 2 either failed adequately to supervise their employees or failed to investigate or adequately respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff therefore fails to demonstrate that Defendants Woods, Ludwick, Rivard, Best, Duma, McCormick, Siriano, DeVerney, S. Smith, Stapleton,

Berlinger, Sheets-Parsons, Sibbald, Russell, Armstrong, J. Smith, Davis and unknown parties ##1 and 2 engaged in any active unconstitutional behavior when they failed to supervise their employees or failed to respond to or investigate grievances.

### C.    Denial of Access to Grievance Process

Plaintiff complains that Defendants Berlinger and Sheets-Parsons improperly prevented him from filing grievances and ultimately placed him on modified grievance access. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants Berlinger and Sheets-Parsons did not deprive him of due process by preventing him from accessing the grievance process.

### D.    Misconduct Tickets

Plaintiff claims that the major misconduct charges against him were false and that Defendant Stapleton violated his right to due process by refusing to overturn five convictions on administrative review.  He also alleges that Defendants Alford and Holland violated his right to due process by failing to adequately investigate those charges after Plaintiff requested investigation. Finally, Plaintiff contends that Defendant Hearings Officer Theut knew that Plaintiff had requested

investigation and certain information for his defense, yet he found Plaintiff guilty of misconduct, notwithstanding the lack of Plaintiff's requested information.  Plaintiff's claims are without merit.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest.  In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted for crimes occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).  Plaintiff's convictions were in 1994.

that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  481 F.3d at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court* (Order of Jan. 4, 2011).  In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff has not identified any significant deprivation arising from his convictions.  Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails.  *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

As a consequence, Plaintiff's due process claim against Stapleton is without merit. For the same reason, if Plaintiff had no liberty interest in his misconduct convictions, he cannot show that Defendant Theut deprived him of due process by finding him guilty or that Defendants Alford and Holland deprived him of due process by failing to adequately to investigate the incidents.  *See also Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003) (holding that due process

does not require that a hearings investigator must conduct his investigation in a certain way or that

Petitioner must be given advance notice of the evidence), *aff'd*, 110 F. App'x 491 (6th Cir. 2004).

As a result, Plaintiff fails to state a due process claim against Theut, Holland, Alford, or Stapleton

based on the handling of his misconduct proceedings.

### E.    Property Claim

Plaintiff next alleges that, on March 3 or 4, 2009, Defendant Alford took possession

of certain of his personal property, thereby causing him to incur the financial loss.  He also alleges

that Alford's conduct prevented him from using the property in question during the course of his

misconduct proceedings.  To the extent that Plaintiff complains that Alford's conduct interfered with

his due process rights at his misconduct hearings, the Court previously has concluded that Plaintiff

had no liberty interest in the outcome of the misconduct hearings.  As a consequence, Alford's taking

of the unspecified property did not interfere with Plaintiff's right to due process in the context of his

misconduct proceedings.

To the extent that Plaintiff complains that he was deprived of his property interest in

the unidentified personal property, his claim is is barred by the doctrine of *Parratt v. Taylor*, 451

U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a

person deprived of property by a "random and unauthorized act" of a state employee has no federal

due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate

post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."

*Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property,

as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v.

Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unautho-

rized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot meet his burden.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account.  *Copeland*, 57 F.3d at 480.  In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate.  *Id.* at 479-80 (money wrongly removed from prison account); *Lillie v. McGraw*, No. 97-3359, 1997 WL 778050, at *1 (6th Cir. Dec. 12, 1997) (officials allegedly broke television); *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Accordingly, the Court will dismiss Plaintiff's due process claim against Defendant Alford based on the taking of his property.

### F.      Access to the Courts

Plaintiff alleges a variety of access-to-the-courts claims.  First, Plaintiff claims that Defendants Ludwick, Rivard, Beltz, and Kohloff interfered with his access to the courts by implementing a policy of paying installments on the filing fees owed by Plaintiff in multiple cases on a pro rata basis, rather than by paying off filing fees in each case seriatum.  Second, Plaintiff

contends that Defendants Coston and Harrington failed to open the door of his cell on more than one occasion, thereby preventing Plaintiff from having his legal mail processed and mailed. Third, Plaintiff alleges that Defendants Harrington and Sivik prevented him from going to the law library to obtain information that was necessary to a legal case on which Plaintiff was working. Fourth, Plaintiff alleges that Defendant Valone, despite knowing that Plaintiff was indigent and was working on litigation against the MDOC, refused to provide Plaintiff with unspecified legal materials. Fifth, Plaintiff contends that Defendant VandeCasteele denied him access to the law library or library materials between January 15 and 24, 2010, and that Defendants Hollenbeck and Raddatz denied him all access to the library and library materials between April 2009 and June 2009. Sixth, he alleges that, on December 7, 2009, Defendant VandeCasteele refused to photocopy an unidentified document that Plaintiff allegedly needed to effectively appeal a case. Seventh, Plaintiff alleges that Defendant Hollenbeck denied his request for copies on March 29, 2010. Eighth, Plaintiff complains that Defendants Best and Holland created a policy that stopped his ability to obtain legal copies, preventing Plaintiff from providing a legal copy for the court that somehow caused an unspecified case to be dismissed.

Plaintiff's allegations are completely inadequate to support an access-to-the-courts claim. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.*

- 19 -

at 824-25.   An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.   In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."   *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997).   In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.   *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.   The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.   Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.   "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."   *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).   In addition, the underlying action must have asserted a non-frivolous claim.   *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).   Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."

- 20 -

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3).    The

*Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of

action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair

notice to a defendant." *Christopher*, 536 U.S. at 416.

Here, each of Plaintiff's access-to-the-courts claims fails because he fails to allege

any Defendant's conduct caused actual injury to a pending legal action, with the exception of his

allegations about Defendant Best and Holland. *Lewis*, 518 U.S. at 355.  Moreover, Plaintiff wholly

fails to allege the nature of any underlying claim that may have been frustrated, whether by Best or

Holland or any other Defendant. *Christopher*, 536 U.S. at 416.  For both reasons, Plaintiff's access-

to-the courts claims will be dismissed.   In the absence of other viable claims against them,

Defendants Ludwick, Rivard, Beltz, Kohloff, Coston, Harrington, Sivik, Valone, VandeCasteele,

Hollenbeck, Raddatz, Best and Holland will be dismissed from the action.

## G.    Mail Issues

Plaintiff complains that Defendant Reno refused to meter 20 envelopes submitted by

Plaintiff, ostensibly because the envelopes contained the MDOC logo.  According to Plaintiff,

Defendant Gager sold only those envelopes at the prison store.  Plaintiff alleges that, between them,

Defendants Gager and Reno prevented him from sending mail to his family and friends for some

unspecified period.  In addition, Plaintiff alleges that Defendants Evans and Hughes rejected his

incoming mail (a birthday card) because it was unsigned.[3]   Finally, Plaintiff complains that

---

[3]Plaintiff also alleges that Defendant Scott Smith subsequently informed him that the birthday card had been lost.  The Court previously has concluded that Plaintiff's allegation fails to demonstrate active unconstitutional conduct by Defendant Scott Smith.

Defendants unknown mailroom employees ##3, 4, and 5 opened his legal mail outside his presence on September 11, 2009, October 30, 2009, and February 9, 2010, respectively.

Plaintiff's allegation against Defendant Gager fails to state a claim. Plaintiff alleges only that Gager sold Plaintiff certain envelopes that Defendant Reno ultimately refused to meter. Plaintiff does not have a constitutional right to have the prison store offer for purchase only envelopes that may be used for outgoing personal mail. Moreover, at best, Plaintiff alleges no more than negligent conduct by Gager, which is not actionable under § 1983. *See  Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)).

As a consequence, Plaintiff's claim against Defendant Gager will be dismissed for failure to state a claim. The Court concludes that Defendant's remaining mail claims against Defendants Reno, Evans, Hughes and the unknown mailroom employees ##3, 4, and 5 are sufficient to warrant service at this juncture.

### H.    Retaliation

Plaintiff claims that Defendants Woods and Ludwick approved unspecified punishment against him for filing grievances. Plaintiff also alleges that Defendants Woods, Schroeder, Miller, Marquette, Olson, and Norton retaliated against him by issuing a major misconduct, placing him in punitive segregation, and transferring him to another prison for refusing to be placed in a six-man punitive segregation cell. In addition, Plaintiff claims that, on July 29, 2009, Defendant Thelen retaliated against him for complaining to Defendant Rivard about Thelen's refusal to open Plaintiff's cell door. Thelen allegedly called Plaintiff a "snitching bitch," threatened him, and ransacked Plaintiff's personal property

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

- 23 -

Plaintiff's allegations that Defendants Woods and Ludwick retaliated against him for filing unspecified grievances merely allege the ultimate fact of retaliation.  Plaintiff has not presented any facts to support his conclusion that Defendants Woods and Ludwick retaliated against him because he filed a grievance against some other, unnamed officer.  Moreover, Plaintiff wholly fails to allege the nature of the ostensibly adverse action they committed  Accordingly, his speculative allegations against Defendants Woods and Ludwick fail to state a claim.

Plaintiff's claim that Defendants Woods, Schroeder, Miller, Marquette, Olson, and Norton retaliated against him because he refused a direct order to enter a particular cell fails to state a claim.  According to the allegations, the supposedly retaliatory conduct was taken because Plaintiff refused a direct order to enter a cell, not because he engaged in any protected First-Amendment conduct.  Plaintiff therefore fails to demonstrate the first prong of a viable retaliation claim against Defendants Woods, Schroeder, Miller, Marquette, Olson, and Norton.

Upon review, the Court will order service of Plaintiff's retaliation claim against Defendant Thelen.

## I.  Eighth Amendment

Plaintiff raises a variety of Eighth Amendment claims.  First, he alleges that Defendant Renard refused to provide him safety and health equipment to prevent Plaintiff's exposure to excessive dust, dirt and contaminants, despite Plaintiff's claim that he was becoming dizzy and nauseous without the safety items.  The lack of safety equipment caused Plaintiff to lose consciousness, fall down a stair, and sustain injuries to his head, back, neck, and right shoulder.[4]

---

[4] As previously discussed, Plaintiff also alleges that Defendants Woods and unknown parties ##1, 2, and 3 also failed to investigate or take corrective action when Plaintiff complained about the conditions.  The Court previously has concluded that Plaintiff's claim against these Defendants fails to allege active unconstitutional conduct.

- 24 -

Plaintiff also alleges that Defendant Sizer failed to treat him in health care the week before his fall because Plaintiff refused to sign the co-pay agreement.  Third, Plaintiff alleges that Defendant Robinette refused to provide pain medication for the injuries to Plaintiff's head and back, directing him to purchase the pain medication from the commissary, despite knowing that Plaintiff could not afford to buy the medication.[5]  Fourth, Plaintiff complains that Defendants Hanson and Ames ordered Plaintiff to leave the dining hall without finishing his meal, in violation of policy and subjecting Plaintiff to hunger.  Fifth, he alleges that, while he was on toplock status between March 4 and March 11, 2009, he missed several meals when Defendants Renard, Wallis and Wilson were not in place to provide Plaintiff the necessary authorization to go to the dining hall.  Sixth, Plaintiff complains that, during the same period, Defendants Renard, Wallis and Wilson did not always ensure that Plaintiff could use the bathroom every hour, which, because of a medical condition, forced Plaintiff to urinate in his drinking cup or on himself on more than one occasion.  Seventh, Plaintiff contends that Defendant Duma placed him in a dirty holding cell for four hours, during which Plaintiff was given no bathroom break.  Duma subsequently placed Plaintiff in a punitive segregation cell for an unspecified period, during which he was not given showers and, for at least some period, his cell was not cleaned, despite a toilet overflow.  Eighth, Plaintiff alleges that Defendant Fuentes denied him clean clothes and other items on some unspecified occasion.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The

---

[5]Plaintiff also alleges that Defendants J. Smith and Davis were aware that Plaintiff was being denied pain medications for three months, but they failed to take action to correct the denial.  The Court previously has concluded that Plaintiff's claim against these Defendants fails to allege active unconstitutional conduct.

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

Plaintiff's claims against Defendants Hansen, Ames, Wallis, Wilson, Duma, and Fuentes fail to state a claim. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)); *but see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010)

- 26 -

(holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).  Plaintiff alleges no more than that, by their inattention, Defendants Hansen, Ames, Renard, Wallis, Wilson, and Duma, deprived him of occasional meals and inadequate bathroom breaks on an unspecified number of occasions during a one-week period.[6]  He alleges only that Defendant Fuentes denied him clean clothing and other unspecified items on some occasion or occasions during a three-month period.  At best, Plaintiff's allegations against these Defendants allege no more than temporary inconveniences. They fail entirely to demonstrate the requisite deliberate indifference to his health or safety.[7]

Plaintiff also fails to state an Eighth Amendment claim against Defendant Sizer.  A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834.  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004).  The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d

---

[6]The allegations against Defendant Renard for occasionally failing to be available for hourly bathroom breaks and meal releases during the one-week period of Plaintiff's toplock sanction fails to state a claim for the identical reasons.

[7]To the extent that Plaintiff claims that Hanson and Ames violated MDOC policy by forcing him to leave the dining hall before finishing his meal, he fails to state a § 1983 claim.  Section 1983 does not provide redress for a violation of a state law or policy. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).   Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*   Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Plaintiff alleges only that Sizer failed to treat him a week before his fall.  At that time, he complained of dizziness and nausea.  A prisoner's single health care request for treatment of dizziness and nausea falls far short of demonstrating an objectively obvious substantial risk of serious harm.  Further, Plaintiff fails entirely to allege that Sizer made any such inference about the risk of serious harm.  Plaintiff therefore fails to state a claim against Sizer.

The Court will order service of Plaintiff's Eighth Amendment claim against Defendant Robinette for failing to provide pain medication for a three-month period and against Defendant Renard for repeatedly refusing to provide health and safety equipment.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Woods, Ludwick, Duma, McCormick, Suriano, DeVerney, S. Smith, Stapleton, Berlinger, Sheets-Parsons, Sibbald, Russell, Armstrong, J. Smith, Davis, Theut, Alford, Hanson, Ames, Wallis, Wilson, Fuentes, Schroeder, Miller, Olson, Norton, Marquette, Rivard, Beltz, Kohloff, Best, Holland, Coston, Harrington, Sivik, Valone, VandeCasteele, Hollenbeck, Raddatz, Gager, Sizer, and unknown parties ##1 and 2 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The

Court will serve the complaint against Defendants Thelen, Reno, Evans, Hughes, Renard, and Robinette.[8]

An Order consistent with this Opinion will be entered.


Dated:  _____8/9/2011_____         _____*/s/ R. Allan Edgar*_____
                                        R. Allan Edgar
                                        United States District Judge

---

[8]The Court lacks sufficient information at this juncture to order service on the three unknown mailroom employees.